IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JERI M. SUBER CREDIT SHELTER TRUST, BY HER TRUSTEE, JAMES A. SUBER AND COLUMBIA FOOT CLINIC, P.A., <br><br> Plaintiffs, <br><br> STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANIES, <br><br> Defendant. | C.A. No. 3:08-03387-CMC <br><br><br><br> **OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT** |

Through this action, Jeri M. Suber Credit Shelter Trust, by [its] Trustee, James A. Suber ("Trust") and Columbia Foot Clinic, P.A. ("CFC") (collectively "Plaintiffs") seek recovery from State Auto Property and Casualty Insurance Company[1] ("State Auto") for alleged bad faith denial of Plaintiffs' claim for additional benefits under a business owners insurance policy. The matter is now before the court on State Auto's motion for summary judgment which relies, *inter alia*, on an argument that Plaintiffs lack standing to pursue any claim against State Auto. The court agrees and dismisses all of Plaintiffs' causes of action on this basis.[2] Having found that Plaintiffs lack standing, the court declines to address State Auto's other arguments.

---

[1] Plaintiffs identified the defendant as "State Auto Property and Casualty Insurance Companies" in the Summons and Complaint. Dkt. No. 1-1. However, Defendant's correct name is "State Auto Property and Casualty Insurance Company." Dkt. Nos. 1-2 at 1, 2 at 4. The court, therefore, will use the latter name when referring to Defendant by its full name.

[2] The motion currently before the court is captioned as a motion for summary judgment. However, that portion of the motion which relates to standing seeks dismissal, as is appropriate for such a motion.

1

**STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

**BACKGROUND**

On June 19, 2004, a fire occurred in a building located at 1516 Calhoun Street, Columbia, South Carolina. Dkt. No. 1-1 ¶ 8. The building was owned by Ralph E. Payne ("Payne") and

housed the office of CFC. *Id.* ¶ 8-10. Before the fire, Payne obtained a policy of business owners insurance, policy no. BOP2064558 02 ("Policy"), issued by State Auto and naming "RALPH E PAYNE DBA COLUMBIA FOOT CLINIC PA" as the insured. Dkt. No. 18-2 at 7. The policy was effective for the period from June 22, 2003 through June 22, 2004. *Id.* Thus, the fire occurred during the policy period.

Payne sold the building at 1516 Calhoun Street to the Trust on March 10, 2006, for $5.00 and assumption of the mortgage. Dkt. No. 18-4 at 2-3. The buyer's signature line on the Contract of Sale reflects that the typed name "James Suber" was struck through and replaced with what is apparently James A. Suber [Jr.'s] signature followed by the handwritten words "Trustee Jeri Suber Trust." *Id.* at 3. Plaintiffs assert that this sale "include[d] all insurance proceeds from the above policy, regarding the loss to the real property." Dkt. No. 1-1 ¶ 11. There is, however, no reference to the Policy in the March 10, 2006 Contract of Sale. Dkt. No. 18-4 at 2-3. Moreover, the contract provides that the property is being "sold strictly 'AS IS'" and that "THERE ARE NO OTHER AGREEMENTS EXCEPT AS STATED HEREIN." *Id.*

In addition, there is an express assignment of certain rights under the Policy which was executed roughly two months later, on an unspecified day in May 2006. Dkt. No. 18-5 ("Assignment"). Through this written assignment, Payne assigned certain of his rights under the Policy to James A. Suber, Jr. ("Suber").[3] *Id.* at 2-3. The Assignment granted to Suber

> [a]ny and all rights relating to coverage or indemnification for losses to the physical building located at 1516 Calhoun Street, Columbia, South Carolina which Assignor [Payne] may have, own or possess under certain policies of insurance issued by State Auto Property and Casualty Insurance Company, in particular Businessowners Policy BOP 2064558 02 together with all endorsements, amendments and

---

[3] Although identified in the Assignment as James A. Suber, *Jr.*, and elsewhere as James A. Suber, the person identified as trustee and in the Assignment is apparently the same individual.

3

extensions.

Dkt. No. 18-5 at 2. The Assignment also states that it is "LIMITED SOLELY TO PROCEEDS OR CLAIMS DIRECTLY CONCERNING THE PHYSICAL DAMAGE SUSTAINED TO THE BUILDING ITSELF." *Id.* "James A. Suber, Jr." is referred to twice in the body of the Assignment and again in the typed name below Suber's signature. Dkt. No. 18-5 at 2-3. There is no reference to the Trust. *Id.*

The burned structure at 1516 Calhoun Street was razed in October 2006. Dkt. No. 18-7 at 8. Construction then began on a new building on the 1516 Calhoun Street property, and CFC moved into this new building in June 2007. *Id.* In August 2007, Payne sold his practice, generally referred to as CFC, to Suber. *See* Dkt. No. 18-3 at 5 (Payne Dep. at 47) (indicating sale occurred in August 2007); Dkt. No. 18-7 at 6 (Suber Dep. at 66) (indicating that Suber purchased the practice from Payne after the fire but not providing any date).[4]

Plaintiffs allege that they submitted a claim to State Auto for "total destruction of the building" at some point after the execution of the Assignment.[5] Dkt. No. 1-1 ¶ 13. Presumably, this claim was filed on behalf of either the Trust or CFC, or both.[6] According to Plaintiffs, "State Auto

---

[4] Neither party has provided the court with any documents related to the sale of CFC from Payne to Suber. However, Payne testified that a second mortgage on his home was forgiven "as part of the sales price for the practice." Dkt. No. 18-3 at 4 (Payne Dep. at 35).

[5] There is some dispute regarding whether this claim was submitted to State Auto. However, whether a claim was filed on behalf of either, or both, of the currently named Plaintiffs or on behalf of Suber in his individual capacity is not dispositive for reasons addressed below.

[6] Because only the Trust and CFC are named as Plaintiffs, this allegation suggests that the claim was filed on behalf of one or both of those entities: the Trust, of which Suber was the trustee but which, as discussed below, was not the assignee of any rights under the Policy, and CFC, which did not own the building or hold the assignment and which was not sold to Suber until August 2007. However, whether the Trust or CFC, or both, filed this purported claim has no impact on the outcome of this matter because neither Plaintiff held any rights under the Policy and therefore neither was a proper party to file a claim for insurance proceeds.

4

rejected the Plaintiffs' claim for a total loss of the building and asserted that the building was capable of repair." Dkt. No. 1-1 ¶ 14.

On February 17, 2008, six months after selling CFC to Suber, Payne signed a Property Damage Release ("Release") under which he received a payment of $976,153.03 from State Auto under the Policy.[7] Dkt. No. 31-1 at 1. State Auto asserts that $404,226.11 of that payment was for the repair of the building. Dkt. No. 18-1 at 2. However, the Release states that it "shall not be construed to constitute a release of the claims which might have been assigned in that certain Assignment to James A. Suber, Jr. from Ralph E. Payne dated May ___, 2006, and for which payment has not been made." Dkt. No. 31-1 at 2. In his deposition, Payne testified that the payment he received under the Release was for the personal property and business interruption portions of the Policy because the Assignment granted Suber the rights under the portion of the Policy which insured the building itself. Dkt. No. 18-3 at 4. Suber's deposition testimony is to the same effect; stating that he understood the Assignment to have assigned to him the "difference in the coverage that had already been paid and the maximum amount of coverage *on the building*." Dkt. No. 18-7 at 4 (emphasis added).

Plaintiffs filed a Summons and Complaint against State Auto and an insurance agent in the Richland County Court of Common Pleas on March 7, 2008, alleging bad faith, breach of insurance contract, and breach of contract accompanied by a fraudulent act. Dkt. No. 1-1 at 1-2. On October 3, 2008, after the dismissal of the insurance agent, State Auto timely removed the matter to this court, relying on the court's diversity jurisdiction.

## DISCUSSION

---

[7] Despite his earlier sale of CFC, Payne signed this release on behalf of himself *and CFC*. This discrepancy is not, however, at issue in this motion.

5

**I.      Standing**

State Auto argues that neither the Trust nor CFC has standing to bring this lawsuit because the Trust and CFC "are not parties in privity with State Auto, [and therefore] they have no standing to sue under the Policy." Dkt. No. 18-1 at 9. Similarly, according to State Auto, Plaintiffs' bad faith claim fails because neither the Trust nor CFC is a "named insured" under the Policy. *Id.*

As State Auto notes, the named insured is "RALPH E PAYNE DBA COLUMBIA FOOT CLINIC PA." Dkt. No. 18-2 at 7. Payne assigned his rights to any proceeds for the loss of the building at 1516 Calhoun Street to Suber in May 2006. Dkt. No. 18-5 at 2-3. At that point in time, Payne remained the owner of CFC but had earlier sold the building "as is" to the Trust. *See* Dkt. No. 18-3 at 5 (Payne Dep. at 47) (indicating that the sale of CFC to Suber occurred in August 2007); Dkt. No. 18-4 at 2 (Contract of Sale stating that the property was being sold "as is").

**A.      Breach of Contract Claims**

"South Carolina contract law carries a presumption that an individual who is not a party to a contract lacks privity to enforce it." *Trancik v. USAA Ins. Co.*, 581 S.E.2d 858, 861 (S.C. Ct. App. 2003); *see also Bob Hammond Constr. Co. v. Banks Constr. Co.*, 440 S.E.2d 890, 891 (S.C. Ct. App. 1994) ("Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract, and any damage resulting from the breach of a contract between the defendant and a third party is not, as such, recoverable by the plaintiff."). One may, however, acquire standing through assignment. *See Egrets Pointe Townhouses Prop. Owners Ass'n, Inc. v. Fairfield Cmtys., Inc.*, 870 F. Supp. 110, 117 (D.S.C. 1994) ("Without an assignment, a nonparty to a contract does not have standing to sue on the contract."). An assignee has "all of the same rights and privileges, including the right to sue on the contract, as the assignor." *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 518 S.E.2d 44, 45 (S.C. Ct. App. 1999).

6

**CFC Standing.** Both Suber and Payne concede that CFC has no right to any insurance proceeds.[8] The only remaining rights under the Policy are those that were assigned to Suber. As such, CFC lacks standing to pursue any claim in this action.

**Trust Standing.** The Trust, likewise, lacks standing because it is not an assignee of any rights under the Policy. The rights to any claims for physical damage to the 1516 Calhoun Street building were, instead, assigned to "James A. Suber, Jr." Dkt. No. 18-5 at 2-3. Just as the documents relating to the sale of the building to the Trust fail to reference any assignment of rights under the Policy, the Assignment fails to reference the Trust at any point. *Id.* Suber may be the trustee of the Trust, but nothing in the Assignment indicates that Suber was assigned rights under the Policy in any capacity other than as an individual. In contrast, the Contract of Sale by which the building was sold to the Trust clearly and repeatedly refers to the Trust and not to Suber the individual. Dkt. No. 18-4 at 2-3. Suber's signature on the Contract of Sale reflects his understanding of the significant difference between his signature as trustee and as an individual given that he crossed through the typed name "James Suber" and wrote his signature "as trustee." *Id.* at 3. Likewise, his later execution of the Assignment, in his personal capacity, reflects an understanding that the rights under the Policy had not been assigned to the Trust with the sale of the building.

Plaintiffs, nonetheless, urge the court to focus on the intent of the parties in making the

---

[8] In his deposition, Suber, then the sole owner of CFC, conceded that CFC had "zero" rights to proceeds under the Policy. Dkt. No. 18-7 at 7. Payne similarly stated that to his knowledge CFC had no claim to any insurance proceeds for the 1516 Calhoun Street building. Dkt. No. 18-3 at 5. To the extent Payne believed CFC had any independent rights, he purported to release them in February 2008 when he released all claims which either then held for proceeds under the Policy in exchange for a payment of $976,153.03. Dkt. No. 31-1. While reference to CFC in this Release is questionable (as it was then owned by Suber, not Payne), the more critical point is that the only rights not released were those which had been transferred to Suber in May 2006. As noted above, those rights included "all rights relating to coverage or indemnification for losses to the physical building located at 1516 Calhoun Street." Dkt. No. 18-5 at 2.

7

Assignment and suggest that "the intent was to transfer the right of recovery under the insurance policy so that the new owner of the property [the Trust] would be able to challenge the decision of the insurance company not to extend necessary benefits." Dkt. No. 31 at 3 (asserting that it "simply does not make sense that the parties to the Assignment *intended* to assign the insurance claim rights in such a manner so as to completely bar *any* party from recovering under the insurance policy") (emphasis in original). This argument is not only contrary to the clear intent of the key documents (Contract of Sale and separate Assignment)[9] but ignores the fact that Suber, in his individual capacity, likely had standing to pursue these claims.[10] Suber, as trustee, elected to hold the real property in a trust. He and the Trust cannot now disregard the distinctions between the Trust and Suber, as an individual, to cure a defective pleading.[11]

---

[9] *See Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003) (citing *United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc.*, 413 S.E.2d 866 (S.C. Ct. App.1992)) ("The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language. . . . If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." ).

[10] The court notes here, without deciding the issue, that the statute of limitations has likely expired on any contractual or bad faith actions that may have been brought by Suber in his individual capacity. The statute of limitations for all actions brought in this case is three years, as established by S.C. Code Ann. § 15-3-530.

"A statute of limitations generally begins to run on the date a cause of action accrues, and a breach of contract action usually accrues at the time a contract is breached or broken." *State v. McClinton*, 631 S.E.2d 895 (S.C. 2006) (citing *Richland-Lexington Airport Dist. v. American Airlines, Inc.*, 306 F.Supp.2d 548 (D.S.C. 2002)). Although neither party has presented the court with an exact date on which State Auto expressly denied coverage for the replacement of the building, State Auto has produced evidence supporting the argument that Payne was aware of State Auto's position more than three years before the filing of this action. *See* Dkt. No. 34. Suber, as the assignee of Payne's rights under the Policy, stands in Payne's position. *See Singletary v. Aetna Cas. & Sur. Co.*, 447 S.E.2d 869, 870 (S.C. Ct. App.1994) (holding an "assignee . . . stands in the shoes of its assignor"). Similarly, the statute of limitations for a bad faith action against State Auto for denial of additional insurance benefits would begin running when State Auto denied coverage.

[11] If the parties to the Contract of Sale and Quit Claim Deed had intended to include the assignment as part of that transaction, there would have been no need to make a separate assignment

8

Therefore, because the Trust is neither an original party to the Policy, nor was it assigned any rights under the Policy, it lacks standing to bring the breach of insurance contract and breach of contract accompanied by a fraudulent act claims. Likewise, CFC lacks standing for reasons set forth above.

**B.     Bad Faith Claim**

Under South Carolina law, the elements of a bad faith refusal to pay insurance benefits cause of action are "(1) the existence of a contract of insurance between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured." *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 457 (D.S.C. 2008) (citing *Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994)). It follows that "[a] tort action for an insurer's bad faith refusal to pay benefits does not extend to third parties who are not named insureds." *Kleckley v. Northwestern Nat'l Cas.Co.*, 526 S.E.2d 218, 219 (S.C. 2000).

For reasons explained in the preceding section, neither Plaintiff can claim to be a named insured under the Policy. Furthermore, neither was assigned any rights under the Policy which would permit them to bring this bad faith claim against State Auto. Therefore, the court concludes that Plaintiffs also lack standing to bring the bad faith claim against State Auto.

**C.     Unfair Surprise**

The court also finds that there is no unfair surprise in this defense. State Auto has maintained throughout the pendency of this action that Plaintiffs lacked standing. For example, in its Answer, filed in the Richland County Court of Common Pleas on May 12, 2008, State Auto

---

roughly two months later. Neither is it reasonable to assume that the parties intended the later assignment to be in favor of the Trust when it is nowhere mentioned in that document.

9

asserted as its Third Defense that "plaintiffs lack standing to bring this action." Dkt. No. 1-2 ¶ 27. Likewise, in the Joint Rule 26(f) Discovery Plan and Local Rule 26.03 Report State Auto states that

> State Auto has asserted multiple defenses which are fully set forth in its answer. In summary, it denies that Plaintiff Columbia Foot Clinic, P.A. is a corporate entity and that it has any standing or rights to bring the claims asserted in the complaint. Further, neither of the plaintiffs is an insured on the policy of insurance at issue. As such, neither plaintiff has any standing or right to bring the claims asserted against State Auto in the complaint.

Dkt. No. 9 at 7 (internal citations omitted). Despite this notice, Plaintiffs have failed to seek leave to amend the Complaint to substitute James A. Suber, Jr. as the proper plaintiff.

## II.     Other Grounds for Summary Judgment

Because the court finds that Plaintiffs lack standing, it declines to address State Auto's other arguments.

## CONCLUSION

For the reasons set forth above, the court concludes that State Auto is entitled to judgment as a matter of law that neither the Jeri M. Suber Credit Shelter Trust by her Trustee, James A. Suber, nor Columbia Foot Clinic, P.A. has an actionable interest under the Policy and therefore that both Plaintiffs lack standing to bring this suit. Accordingly, all of Plaintiffs' causes of action against Defendant State Auto Property and Casualty Insurance Company are **dismissed** for lack of standing.

IT IS SO ORDERED.

                                                s/ Cameron McGowan Currie
                                                CAMERON MCGOWAN CURRIE
                                                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 4, 2009